No. 20-2128

In the

# United States Court of Appeals
## for the Seventh Circuit

———————————

DANIEL LEWIS LEE,
Petitioner-Appellant,

v.

T.J. WATSON, Warden, and
UNITED STATES OF AMERICA,
Respondents-Appellees.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
District Court No. 2:19-CV-00468-JPH-DLP (Hanlon, J.) **(Capital Case)**

———————————

**BRIEF IN RESPONSE FOR THE UNITED STATES**

———————————

JOSH J. MINKLER
United States Attorney
Southern District of Indiana

MICHAEL GORDON
Assistant United States Attorney
Eastern District of Arkansas

BRIAN C. RABBITT
Acting Assistant Attorney General

JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Rm. 1260
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iv

INTRODUCTION .............................................................................. 1

JURISDICTIONAL STATEMENT ..................................................... 2

STATEMENT OF THE ISSUES.......................................................... 2

STATEMENT ...................................................................................... 3

    I.    Procedural Overview ........................................................ 3

    II.   The Murders.................................................................... 8

    III.  Trial and Sentencing ...................................................... 8

    IV.  Habeas Petition.............................................................. 10

        A.    Petition ................................................................ 11

        B.    Stay..................................................................... 12

        C.    Denial on the Merits........................................... 14

SUMMARY OF ARGUMENT ........................................................... 15

ARGUMENT ..................................................................................... 16

    I.    Legal Standard: The Saving Clause ............................... 16

    II.   Lee's Ineffective-Assistance Claim Is Not Cognizable Under
        the Saving Clause ......................................................... 19

        A.    Relevant Background ........................................... 20

            1.    Evidence at Trial........................................ 20

            2.    Post-Trial Motion for a New Sentencing
                Hearing................................................... 22

            3.    Lee's § 2255 Motion ................................. 24

4.      Rule 59(e) Reconsideration Motion ........................... 25

5.      Lee's § 2255 Appeal.................................................... 27

6.      Lee's First Rule 60(b) Motion ................................... 28

7.      Lee's Fourth Rule 60(b) Motion ............................... 29

B.      Section 2255 Was Not Inadequate or Ineffective to
Raise Lee's Ineffective-Assistance Claim .......................... 31

1.      Section 2255 Was Not Inadequate or Ineffective
Because of Shortcomings by Lee's § 2255
Lawyers ................................................................... 32

2.      Section 2255 Was Not Inadequate or Ineffective
Because Lee Received a Full Round of Review
Despite Any Shortcomings by His Lawyers ............. 35

III.   Lee's *Brady* and *Napue* Claims Are Not Cognizable Under
the Saving Clause ........................................................................ 37

A.      Relevant Background ......................................................... 37

1.      Sentencing Hearing ................................................. 37

2.      Successive § 2255 Motion ........................................ 39

3.      Habeas Petition........................................................ 41

B.      Section 2255 Was Not Inadequate or Ineffective to
Raise Lee's *Brady* and *Napue* Claims............................... 41

IV.   The Claims in Lee's Habeas Petition Lack Merit ........................ 47

A.      The Ineffective-Assistance Claim Lacks Merit .................. 48

1.      The Psychopathy Testimony at Lee's Trial Was,
by Lee's Own Account, Correct and Accurate ......... 48

2.      The Psychopathy Testimony Was Admissible.......... 49

3.    Lee Cannot Show *Strickland* Prejudice or
Deficient Performance .................................................. 52

B.    The *Brady* and *Napue* Claims Lack Merit .......................... 55

CONCLUSION ............................................................................. 56

CERTIFICATE OF COMPLIANCE .................................................. 57

CERTIFICATE OF SERVICE ......................................................... 58

# TABLE OF AUTHORITIES

**Cases**

*Banister v. Davis,*
   140 S. Ct. 1698 (2020).................................................................... 30

*Barefoot v. Estelle,*
   463 U.S. 880 (1983)........................................................................ 50

*Boumediene v. Bush,*
   553 U.S. 723 (2008)........................................................................ 17

*Brady v. Maryland,*
   373 U.S. 83 (1963).......................................................................... 11

*Bruce v. Warden Lewisburg USP,*
   868 F.3d 170 (3d Cir. 2017) .......................................................... 17

*Davis v. United States,*
   417 U.S. 333 (1974)........................................................................ 16

*Fuller v. United States,*
   398 F.3d 644 (7th Cir. 2005)................................................... 32, 35

*Garza v. Lappin,*
   253 F.3d 918 (7th Cir. 2001).......................................................... 18

*Gonzalez v. Crosby,*
   545 U.S. 524 (2005)........................................................................ 28

*In re Davenport,*
   147 F.3d 605 (7th Cir. 1998)..................................................... 18, 32

*In re Federal Bureau of Prisons' Execution Protocol Cases,*
   955 F.3d 106 (D.C. Cir. 2020).......................................................... 7

*Lee v. Watson,*
   No. 19-3399, 2019 WL 6718924 (7th Cir. Dec. 6, 2019).............. 6, 13, 14, 45

*Martinez v. Ryan,*
   566 U.S. 1 (2012)............................................................................ 29

*Massaro v. United States,*
    538 U.S. 500 (2003).......................................................................... 32

*McAfee v. Thurmer,*
    589 F.3d 353 (7th Cir. 2009).......................................................... 55

*McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.,*
    851 F.3d 1076 (11th Cir.) (en banc) ............................................ 19

*Poe v. LaRiva,*
    834 F.3d 770 (7th Cir. 2016)......................................................... 33

*Prost v. Anderson,*
    636 F.3d 578 (10th Cir. 2011)....................................................... 19

*Purkey v. United States,*
    No. 19-3318, --- F.3d ---, 2020 WL 3603779 (7th Cir. July
    2, 2020) ................................................................. 18, 19, 33, 34

*Purkey v. United States,*
    No. 19-cv-414, 2019 WL 6170069 (S.D. Ind. Nov. 20, 2019)....................... 14

*Stitt v. United States,*
    369 F. Supp. 2d 679 (E.D. Va. 2005)............................................ 54

*Strickland v. Washington,*
    466 U.S. 668 (1984)........................................................... 32, 52, 55

*Taylor v. Gilkey,*
    314 F.3d 832 (7th Cir. 2002)......................................................... 33

*Trevino v. Thaler,*
    569 U.S. 413 (2013).......................................................................... 29

*Tyler v. Cain,*
    533 U.S. 656 (2001).......................................................................... 17

*United States v. Barnette,*
    211 F.3d 803 (4th Cir. 2000).................................................... 53, 54

*United States v. Barrett,*
    178 F.3d 34 (1st Cir. 1999).......................................................... 33

*United States v. Buenrostro,*
    638 F.3d 720 (9th Cir. 2011).......................................................... 45

*United States v. Coonce,*
    932 F.3d 623 (8th Cir. 2019)........................................................ 50

*United States v. Fields,*
    483 F.3d 313 (5th Cir. 2007)........................................................ 53

*United States v. Hayman,*
    342 U.S. 205 (1952) .................................................................... 16

*United States v. Lee,*
    274 F.3d 485 (8th Cir. 2001), *cert. denied,* 537 U.S. 1000 (2002)........passim

*United States v. Lee,*
    374 F.3d 637 (8th Cir. 2004), *cert. denied,* 545 U.S. 1141
    (2005) ...................................................................... 3, 8, 24, 51

*United States v. Lee,*
    715 F.3d 215 (8th Cir. 2013), *cert. denied,* 135 S. Ct. 72
    (2014) .................................................................. 4, 27, 36, 51

*United States v. Lee,*
    792 F.3d 1021 (8th Cir. 2015), *cert. denied,* 137 S. Ct. 1577
    (2017) ...................................................................... 4, 28, 29

*United States v. Lee,*
    89 F. Supp. 2d 1017 (E.D. Ark. 2000) ................................. 3, 22, 23

*United States v. Lee,*
    960 F.3d 1023 (8th Cir. 2020)....................................... 7, 30, 36

*United States v. Lee,*
    No. 97-CR-243, 2008 WL 4079315 (E.D. Ark. Aug. 28, 2008) ...... 4, 8, 24, 25

*United States v. Lee,*
    No. 97-CR-243, 2010 WL 5347174 (E.D. Ark. Dec. 22, 2010)..............passim

*United States v. Lee,*
    No. 97-CR-243, 2014 WL 1093197 (E.D. Ark. Mar. 18, 2014)................ 4, 28

*United States v. Shields,*
    789 F.3d 733 (7th Cir. 2015).......................................................................... 55

*United States v. Stitt,*
    552 F.3d 345 (4th Cir. 2008).......................................................................... 54

*United States v. Wilson,*
    787 F.2d 375 (8th Cir. 1986).......................................................................... 55

*Washington v. Parkinson,*
    737 F.3d 470 (7th Cir. 2013).......................................................................... 46

*Webster v. Daniels,*
    784 F.3d 1123 (7th Cir. 2015) (en banc) ...............................................passim

*Worman v. Entzel,*
    953 F.3d 1004 (7th Cir. 2020).......................................................................... 18

## Statutes and Rules

18 U.S.C. § 3593............................................................................................ 23, 51

28 U.S.C. § 2241 ...............................................................................................passim

28 U.S.C. § 2255................................................................................................passim

Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No.
    104-132, 110 Stat. 1214 .............................................................................. 17

Fed. R. App. 4 ..................................................................................................... 2

## INTRODUCTION

Lee and co-defendant Chevie Kehoe committed three murders in 1996 in connection with their efforts to establish an independent nation of white supremacists in the Pacific Northwest. Lee was convicted of three counts of capital murder and sentenced to death by a jury in the United States District Court for the Eastern District of Arkansas. Lee's conviction and sentence have received extensive review by the district court in Arkansas and the Eighth Circuit on direct appeal and on collateral review, and the government is prepared to carry out Lee's lawful sentence.

Lee's habeas petition lacks merit and provides no basis to avoid Lee's capital sentence. Although the procedural history of this case is complex, the legal issues presented here are straightforward. Lee's habeas petition asserts an ineffective-assistance claim and *Brady* and *Napue* claims that Lee had an unobstructed opportunity to raise in his motion for collateral relief under 28 U.S.C. § 2255. All of the facts and law needed to assert those claims were known or reasonably available to Lee at the time he filed his § 2255 motion. As a result, § 2255 was not "inadequate or ineffective" to raise those claims, and the saving clause of § 2255(e) forecloses Lee from raising them in a habeas petition under 28 U.S.C. § 2241.

1

The government notes that Lee has not sought a stay of his execution. This appeal provides no basis to prevent Lee's execution from going forward on July 13, 2020.

## JURISDICTIONAL STATEMENT

The district court exercised jurisdiction under 28 U.S.C. § 2241. The district court denied Lee's § 2241 habeas petition on March 20, 2020, App. 3-10, and on June 26, 2020, the court denied a timely motion for reconsideration under Federal Rule of Civil Procedure 59(e), App. 11-15.[1] Lee filed a timely notice of appeal that same day. Dkt. 46; *see* Fed. R. App. 4(a)(1)(B) and 4(a)(4)(A)(v). This Court's jurisdiction rests on 28 U.S.C § 1291 and § 2253.

## STATEMENT OF THE ISSUES

1.     Whether 28 U.S.C. § 2255 was inadequate and ineffective to raise an ineffective-assistance-of-counsel claim that Lee (by his own account) raised in his § 2255 motion (albeit insufficiently) and on which Lee received a

---

[1] "App." refers to the appendix filed by Lee. "Supp. App." refers to Lee's supplemental appendix. "Dkt." refers to district court docket entries in this case. "Tr." refers to the consecutivley paginated transcript of Lee's trial in the Eastern District of Arkansas, the relevant portions of which the government filed in the district court here. *See* Dkt. 14 (attachments). "Ark. Dkt." refers to district court docket entries in Lee's criminal case in the Eastern District of Arkansas, *United States v. Lee*, No. 97-CR-243.

full round of review on the merits in the Arkansas district court and the Eighth Circuit.

2.     Whether 28 U.S.C. § 2255 was inadequate and ineffective to raise a *Brady* and *Napue* claim based on information that the government allegedly suppressed about a 1990 Oklahoma court hearing, where the only information Lee (or the government) possesses about the hearing derives from a publicly-available document from the Oklahoma case and Lee himself knew what happened at the hearing because both he and his lawyer were present.

## STATEMENT

## I.     Procedural Overview

This capital murder case has a long procedural history. In 1999, a jury in the Eastern District of Arkansas recommended that Lee receive the death penalty for the three murders he committed. In 2000, the Arkansas district court granted Lee's post-trial motion for a new sentencing hearing. *United States v. Lee*, 89 F. Supp. 2d 1017 (E.D. Ark. 2000). The Eighth Circuit reversed and reinstated the death sentence, *United States v. Lee*, 274 F.3d 485 (8th Cir. 2001), *cert. denied*, *Lee v. United States*, 537 U.S. 1000 (2002). The Eighth Circuit then affirmed Lee's conviction and sentence on direct appeal, *United States v. Lee*, 374 F.3d 637 (8th Cir. 2004), *cert. denied*, *Lee v. United States*, 545 U.S. 1141 (2005).

3

Lee filed a motion collaterally attacking his conviction and sentence under 28 U.S.C. § 2255. Ark. Dkt. 1118. The Arkansas district court denied the motion, *United States v. Lee*, No. 97-CR-243, 2008 WL 4079315 (E.D. Ark. Aug. 28, 2008), and also a motion for reconsideration under Federal Rule of Civil Procedure 59(e), *United States v. Lee*, No. 97-CR-243, 2010 WL 5347174 (E.D. Ark. Dec. 22, 2010). The Eighth Circuit then affirmed, *United States v. Lee*, 715 F.3d 215 (8th Cir. 2013), and the Supreme Court denied certiorari, *Lee v. United States*, 135 S. Ct. 72 (2014).

In 2014, the Arkansas district court denied a motion by Lee for relief from judgment under Federal Rule of Civil Procedure 60, concluding that it was an unauthorized second or successive § 2255 motion, *United States v. Lee*, No. 97-CR-243, 2014 WL 1093197 (E.D. Ark. Mar. 18, 2014), and the Eighth Circuit affirmed, *United States v. Lee*, 792 F.3d 1021 (8th Cir. 2015), *cert. denied*, 137 S. Ct. 1577 (2017). In 2019, the Arkansas district court denied on similar grounds another motion—ostensibly filed as a new § 2255 motion and, alternatively, as a motion for relief from judgment under Federal Rule of Civil Procedure 60 (Lee's second). Ark. Dkt. 1313. The Eighth Circuit denied a certificate of appealability. *Lee v. United States*, No. 19-2432 (8th Cir.) (Nov. 4, 2019).

On July 25, 2019, the United States scheduled Lee's execution for December 9, 2019. Lee subsequently filed several new lawsuits and motions

4

attacking his sentence and conviction. He initiated this case on September 26, 2019, two months after the government set a date for his execution, when he filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Indiana—the district where he is confined—under 28 U.S.C. § 2241. Dkt. 1. Lee also sought a preliminary injunction in a separate lawsuit in the district court for the District of Columbia challenging the government's execution protocol. *In re Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-MC-145 (D.D.C.) (Sept. 27, 2019). He additionally filed another lawsuit in the District of Columbia challenging the adequacy of his clemency proceedings. *Lee v. Barr*, No. 1:19-CV-3611 (D.D.C.) (Dec. 2, 2019). And he also filed an application in the Eighth Circuit seeking permission to file a second or successive § 2255 motion raising new claims. *Lee v. United States*, No. 19-3576 (8th Cir.) (filed on Dec. 4. 2019 and denied on Jan. 7, 2020).

The district court in the protocol-litigation case entered a preliminary injunction, *In re Federal Bureau of Prisons' Execution Protocol Cases*, No. 19-MC-145 (D.D.C.) (Nov. 20, 2019), and the government sought relief in the court of appeals and then the Supreme Court. In the meantime, the district court in this case entered a stay pending its disposition of Lee's § 2241 habeas petition. App. 16-41. The government appealed and, on December 6, 2019, filed an emergency motion in this Court to vacate the stay. *Lee v.*

*Watson*, No. 19-3399 (filed Dec. 6, 2019). While the government appeal of the stay was pending, Lee filed another Rule 60 motion (his third) in the Arkansas district court seeking to reopen his § 2255 case, Ark. Dkt. 1352, along with a motion to stay his execution pending that court's disposition of the Rule 60 motion, Ark. Dkt. 1353.

That evening, on December 6, 2019, the Arkansas district court granted Lee's request for stay, Ark. Dkt. 1356, while this Court granted the government's emergency motion and vacated the stay order in this case, *Lee v. Watson*, No. 19-3399, 2019 WL 6718924 (7th Cir. Dec. 6, 2019) (App. 42-44). The Supreme Court then denied the government's application to stay the preliminary injunction in the execution-protocol litigation, stating that it "expect[s] that the Court of Appeals will render its decision with appropriate dispatch." *Barr v. Roane*, No. 19A615 (Sup. Ct.) (order entered Dec. 6, 2019). As a result, Lee's execution could not proceed on December 9, 2019, and although the government appealed the stay order entered by the Arkansas district court, it did not pursue emergency relief in the Eighth Circuit.

On January 29, 2020, while the government's appeals in the Eighth Circuit (the stay order) and the D.C. Circuit (the preliminary injunction) were pending, Lee filed another Rule 60 motion in the Arkansas district court (his fourth). Ark. Dkt. 1363. On March 20, 2020, the district court in this case

6

denied Lee's § 2241 habeas petition. App. 3-10. Lee then filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e). Dkt. 37.

On April 7, 2020, the D.C. Circuit vacated the preliminary injunction in the execution-protocol litigation. *In re Federal Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020). And on June 1, 2020, the Eighth Circuit vacated the stay order from the Arkansas district court. *United States v. Lee*, 960 F.3d 1023 (8th Cir. 2020). Accordingly, on June 15, 2020, the United States rescheduled Lee's execution to take place on July 13, 2020. *See* Dkt. 43.

On June 26, 2020, the district court in this case denied Lee's reconsideration motion. App. 11-15. Lee filed a notice of appeal. Dkt. 46.

The Arkansas district court subsequently denied Lee's third and fourth Rule 60 motions. Ark. Dkt. 1403, 1404. Lee has filed three additional motions in the Arkansas district court that remain pending, including a motion asking the court to postpone his execution until March 19, 2021. Ark. Dkt. 1401; *see* Ark. Dkt. 1387 (motion for DNA testing); Dkt. 1400 (motion to declare execution date "null and void"). Lee has also sought additional preliminary injunctions in the execution-protocol litigation in the D.C. district court.

## II.    The Murders

In connection with efforts to establish an independent nation of white supremacists in the Pacific Northwest, Lee and co-defendant Chevie Kehoe went to the Arkansas home of gun dealer William Mueller in January 1996, expecting to find valuable property, and after taking weapons worth about $30,000 and $50,000 in cash and coins, murdered Mueller and his wife Nancy and their eight-year-old daughter Sarah Powell. *Lee*, 374 F.3d at 641; *Lee*, 2008 WL 4079315, at *4. Lee and Kehoe shot the three victims with a stun gun, placed plastic trash bags over their heads, and sealed the bags with duct tape to asphyxiate them. *Id.* at *4 & n.52. They taped rocks to the bodies and threw them into the nearby Illinois Bayou. *Lee*, 374 F.3d at 641-42.

## III.    Trial and Sentencing

Following a two-month trial, a jury convicted Lee and Kehoe of conducting and conspiring to conduct a racketeering enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c) and § 1962(d), and three counts of capital murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1). *See Lee*, 2008 WL 4079315, at *2. The evidence "overwhelmingly supported the jury's finding of guilt." *Id.* at *25; *see also id.* at *7 (discussing the strength of the evidence).

The Federal Death Penalty Act, 18 U.S.C. §§ 3591-3593, required the jury to determine whether aggravating factors proved by the government

8

sufficiently outweighed any mitigating factors proved by the defendants to justify the death penalty. The government's emphasis at Lee's sentencing hearing was the aggravating factor of his future dangerousness. *See* Tr. 7379-84. The government introduced evidence that in 1990 Lee severely beat an individual named Joey Wavra, forced Wavra down a manhole into a storm sewer, and gave a knife to his cousin, who repeatedly stabbed Wavra and slit his throat. Tr. 7394-96, 7401-07, 7412-15, 7441-46. Lee was initially charged with first degree murder but pleaded guilty to robbery and received a suspended sentence. Tr. 7470; *see* 5/10/1999 Vol. 43C Tr. 17-19. The government also introduced testimony about Lee's violent behavior in prison. *See* Tr. 7462-67. The government argued that this evidence, and the evidence of Lee's offense conduct introduced during the guilt phase of the trial, established that Lee would present a danger to others in the future. Tr. 7381, 7956-75.

The emphasis of the defense presentation was that Lee suffered from mental impairment due to his troubled upbringing. *See, e.g.*, Tr. 7385-88. As relevant here, Lee called an expert witness, Mark Cunningham, Ph.D., who testified that Lee "experienced many traumatic and adverse life experiences that fundamentally shaped him . . . neurologically, psychologically, socially, emotionally and ethically, and that . . . contributed to his involvement in this offense." Tr. 7742. On cross-examination, the government elicited testimony

9

from Dr. Cunningham that an individual who received a high score on a psychological test called the Hare psychopathy checklist revised (PCL-R) was more likely to be violent in the community but that the PCL-R was not a valid predictor of violence in prison. Dr. Cunningham also testified on cross-examination that he had reviewed a report by the government's expert, Thomas Ryan, Ph.D., who had scored Lee within the psychopathy range using the PCL-R. *See infra* p. 21.

The jury found that Lee would present a danger to others in the future, *see* Tr. 8017, 8020, and largely rejected Lee's mitigation case, with one or more of the jurors finding the existence of only five of the 14 mitigating factors claimed by Lee, Tr. 8017-19. After weighing the aggravating and mitigating factors, the jury unanimously decided to impose a sentence of death for each of the three murder charges. Tr. 8019-22.

## IV. Habeas Petition

As summarized above, after Lee's conviction and sentencing, he obtained extensive post-conviction review in both the Arkansas district court and the Eighth Circuit. He challenged his conviction and sentence in a post-trial motion for a new sentencing hearing, on direct appeal, and on collateral review under 28 U.S.C. § 2255.[2] Lee's subsequent § 2241 habeas petition in

---

[2] No federal judge—let alone three, as Lee asserts (Br. 2)—has found that Lee's sentence "likely" violates the Constitution.

this case has asserted two claims that he had previously raised in prior proceedings in the Eastern District of Arkansas.

## A.    Petition

Lee's § 2241 habeas petition first asserted that he received ineffective assistance of counsel at sentencing because his lawyers failed to object to evidence about psychopathy on the ground that the PCL-R is not a scientifically valid predictor of future dangerousness in prison. Dkt. 1, at 6-18. According to Lee, the lawyers who represented him in the § 2255 proceeding "bungled" his § 2255 motion by failing to present this ineffective-assistance claim adequately in that motion. Dkt. 1, at 19. The second claim in Lee's habeas petition asserted that newly discovered evidence—namely information about the 1990 Oklahoma case in which Lee was initially charged with first-degree murder but later pleaded guilty to robbery—supported claims that the government suppressed favorable evidence at his sentencing hearing, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and used false evidence to obtain the death penalty, in violation of *Napue v. Illinois*, 360 U.S. 264 (1959). Dkt. 1, at 41-59. Lee's assertions of government-suppressed evidence derived from a fee application that Lee's lawyer had filed in the 1990 Oklahoma case. Dkt. 1, at 47; *see* Dkt. 1-13 (Oklahoma fee application).

11

Lee argued that he should be permitted to raise these claims in a petitioner for a writ of habeas corpus under 28 U.S.C. § 2241 despite the limitations of 28 U.S.C. § 2255, which provides that district courts "shall not . . . entertain[]" a federal prisoner's petition for a writ of habeas corpus except in cases where § 2255 was "inadequate or ineffective to test the legality of [the prisoner's] detention." 28 U.S.C. § 2255(e). According to Lee, § 2255 was inadequate and ineffective to raise the ineffective-assistance claim asserted in his habeas petition because "[t]he plain failures of his post-conviction counsel" deprived him of his "one chance at relief for this error." Dkt. 1, at 37-38. And Lee asserted that § 2255 was inadequate and ineffective to raise his *Brady* and *Napue* claims on the theory that the evidence supporting those claims was "uncovered" only after his first round of collateral review via § 2255, but was insufficient to satisfy the requirements for raising a second or successive § 2255 motion based on newly discovered evidence. Dkt. 1, at 59-61; *see* 28 U.S.C. § 2255(h)(1) (gatekeeping requirements for successive § 2255 motions based on newly discovered evidence).

## B.   Stay

The district court ordered a stay of execution pending its disposition of Lee's habeas petition. App. 16-41. The court did not address Lee's ineffective-assistance claim but concluded that his *Brady* and *Napue* claims justified a stay. App. 17 & n.1. Relying on *Webster v. Daniels*, 784 F.3d 1123 (7th Cir.

12

2015) (en banc), the district court concluded that there was a "significant possibility" that the saving clause would permit Lee's *Brady* and *Napue* claims to proceed if they rested on newly discovered evidence, App. 26-28, and the court also concluded there was a "significant possibility" that Lee could "prove-up" his *Brady* and *Napue* claims, *id.* at 29-31.

This Court vacated the stay. *Lee v. Watson*, No. 19-3399, 2019 WL 6718924 (7th Cir. Dec. 6, 2019). As relevant here, the Court determined that although the district court had found "a 'significant possibility' that Lee may be able to meet the" standard of the saving clause, the court had failed to make the required finding "that Lee is likely to succeed on the merits or that he has a 'strong' prospect of doing so." *Id.* at *1 (citation omitted). And "[a]s far as we can see," the Court assessed, "the likelihood of success is slim." *Id.*

This Court noted that Lee "makes two substantive arguments—that he received ineffective assistance of counsel at sentencing and that the prosecutor concealed or suppressed exculpatory or impeaching evidence," and "[a]rguments of those kinds are regularly made and resolved under § 2255." 2019 WL 6718924, at *1. Specifically with respect to the cognizability of Lee's *Brady* and *Napue* claims, the Court found that the district court had not explained "why there is even a 'significant possibility' that the supposedly newly discovered evidence is in fact newly discovered, as *Webster* uses that phrase." *Id.* The Court explained that "[t]he principal 'newly discovered'

13

evidence on which Lee relies is a statement made on the record by a judge decades ago and available from that state court." *Id.* "Indeed," the Court explained, "the statement was made in Lee's presence, and although he may not have understood its potential significance that is some distance from the information being concealed or unavailable." *Id.*

### C.    Denial on the Merits

On remand, the district court denied Lee's habeas petition. App. 3-10. The court determined (App. 6-7) that the saving clause foreclosed Lee's ineffective-assistance claim for the same reasons that the saving clause had foreclosed the ineffective-assistance claims asserted by the defendant in *Purkey v. United States*, No. 19-cv-414, 2019 WL 6170069 (S.D. Ind. Nov. 20, 2019). With respect to Lee's *Brady* and *Napue* claims, the court noted (App. 8-9) this Court's determination that the evidence Lee relied on to support those claims was not concealed or unavailable and therefore was not "newly discovered" as that phrase is used in *Webster*, *supra.*

The district court later denied Lee's reconsideration motion. The court reiterated that the fee application from the Oklahoma case was not newly discovered evidence under *Webster* because "[w]ith due diligence, [Lee's] counsel could have accessed the fee application and used it in Mr. Lee's original § 2255 motion to bring *Brady* and *Napue* claims." App. 13. The court continued: "Because the fee application was not concealed or unavailable, Mr.

14

Lee cannot rely on it to satisfy § 2255(e)'s savings clause." *Id.* With respect to the ineffective-assistance claim in Lee's habeas petition, the court explained that "neither the Seventh Circuit nor the Supreme Court has held that a federal prisoner may rely on § 2255 counsel's ineffectiveness to satisfy § 2255(e)'s savings clause," and [w]hile the Seventh Circuit is now considering that question" in the *Purkey* case, "under existing law Mr. Lee cannot show manifest error." *Id.* at 14.

## SUMMARY OF ARGUMENT

The saving clause in 28 U.S.C. § 2255(e) forecloses Lee from raising his ineffective-assistance claim and his *Brady* and *Napue* claims in a habeas petition under 28 U.S.C. § 2241. Section 2255 was not "inadequate or ineffective" to raise those claims. All of the facts and law Lee needed to raise his ineffective-assistance claim were known and available to him at the time he filed his § 2255 motion, and any missteps by his lawyers did not create a structural defect in § 2255 that made it impossible for Lee to raise his claim. Moreover, even though Lee sufficiently raised the claim only belatedly in a reconsideration motion under Federal Rule of Civil Procedure 59(e), the district court nonetheless addressed the merits of the claim, and the Eighth Circuit denied a certificate of appealability. Similarly, the facts and law needed to raise Lee's *Brady* and *Napue* claims were also known or readily accessible to Lee. The information Lee uses to support those claims derive

15

from a publicly available court document by Lee's lawyer regarding a hearing

at which Lee and his lawyer were present. And finally, even though § 2255(e)

forecloses Lee's habeas petition without regard to the merits of the claims Lee

seeks to raise, those claims are also devoid of merit.

## ARGUMENT

### I.     Legal Standard: The Saving Clause

Before 1948, federal prisoners could collaterally attack a final judgment

by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241.

Habeas petitions by federal prisoners collaterally attacking their convictions

or sentences under § 2241 had to be filed in the judicial district in which the

prisoner was confined, which was often different from the district in which he

was convicted and sentenced, creating significant administrative problems.

*See United States v. Hayman*, 342 U.S. 205, 211-14 (1952). In 1948, in order

to alleviate these problems, Congress created a substitute "motion" remedy

for federal prisoners, codified at 28 U.S.C. § 2255, which channeled collateral

attacks by federal prisoners to "the more convenient forum" of the sentencing

court, *id.* at 219, while affording a remedy "identical in scope to federal

habeas corpus," *Davis v. United States*, 417 U.S. 333, 343 (1974).

The 1948 legislation also included an exclusivity proviso confirming

that this new motion remedy was to be used in lieu of, not in addition to, the

§ 2241 habeas remedy. The proviso, currently codified at 28 U.S.C. § 2255(e),

16

states that district courts "shall not . . . entertain[]" a federal prisoner's petition for a writ of habeas corpus except in cases where § 2255 was shown to be "inadequate or ineffective to test the legality of [the prisoner's] detention." 28 U.S.C. § 2255(e). That latter portion of § 2255(e) is commonly referred to as the "saving clause." *See, e.g.*, *Boumediene v. Bush*, 553 U.S. 723, 776 (2008).

In 1996, Congress restricted the grounds on which federal prisoners may file second or successive § 2255 motions through the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, § 105, 110 Stat. 1214, 1220. AEDPA limited the availability of successive § 2255 motions to cases involving either (1) persuasive new evidence that the prisoner was factually not guilty of the offense or (2) a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review. 28 U.S.C. § 2255(h); *cf. Tyler v. Cain*, 533 U.S. 656, 661-62 (2001) (interpreting the state-prisoner analogue to § 2255(h)). AEDPA did not provide for successive § 2255 motions based on other grounds, including statutory decisions issued after denial of the defendant's first § 2255 motion. *See Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 179 (3d Cir. 2017) ("No exception exists for new non-constitutional rules[.]").

This Court has since decided three "central" cases applying the saving clause. *Purkey v. United States*, No. 19-3318, --- F.3d ---, 2020 WL 3603779, at

17

*5 (7th Cir. July 2, 2020). First, in *In re Davenport*, 147 F.3d 605 (7th Cir. 1998), and subsequent cases applying *Davenport*, the Court concluded that the saving clause permits a habeas petition that raises a claim of fundamental statutory error in a federal defendant's conviction or sentence (such as a conviction for conduct that is not criminal) that could not have been asserted in the defendant's first § 2255 proceedings but is subsequently made viable by an intervening decision of statutory interpretation. *See, e.g., Worman v. Entzel*, 953 F.3d 1004, 1008 (7th Cir. 2020). Second, in *Garza v. Lappin*, 253 F.3d 918, 921-23 (7th Cir. 2001), the Court—finding the circumstances "closely analogous" to those in *Davenport*—concluded that the saving clause permitted a habeas petition asserting that the United States was bound by treaty to abide by an international tribunal decision that determined the defendant's death sentence was illegal, a claim that it deemed "literally impossible" for the defendant to raise on direct appeal or in his § 2255 motion because the international tribunal's decision was not available at that time. Third, in *Webster v. Daniels*, 784 F.3d 1123, 1135-44 (7th Cir. 2015) (en banc), the Court allowed a federal defendant to use a habeas petition to raise a claim of categorical ineligibility for the death penalty (because of age or intellectual disability) based on newly discovered evidence that existed at the time of his trial but was unavailable despite diligence by the defense.

18

This Court has explained that *Davenport*, *Garza*, and *Webster* do not "create rigid categories delineating when the safety valve is available." *Purkey*, 2020 WL 3603779, at *8. But it has emphasized that those cases demonstrate, at a minimum, "that the words 'inadequate or ineffective,' taken in context, must mean something more than unsuccessful." *Id*. "[T]here must be a compelling showing that, as a practical matter, it would be impossible to use section 2255 to cure a fundamental problem." *Id*.[3]

## II.  Lee's Ineffective-Assistance Claim Is Not Cognizable Under the Saving Clause

Lee's habeas petition renews an ineffective-assistance claim that he has raised on numerous occasions in the Arkansas district court and the Eighth Circuit. Lee cannot show that § 2255 was inadequate or ineffective to raise that ineffective-assistance claim.

---

[3] The government believes that this Court's cases applying the saving clause—including *Davenport*, *Garza*, and *Webster*—are incorrectly decided. The government agrees with the Tenth Circuit's decision in *Prost v. Anderson*, 636 F.3d 578 (10th Cir. 2011) (Gorsuch, J.), the Eleventh Circuit's en banc decision in *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076 (11th Cir.) (en banc), and the dissent in *Webster*, 784 F.3d at 1146-54 (Easterbrook, J., dissenting), which concluded that the saving clause does not permit a defendant to challenge his conviction or sentence in a § 2241 habeas petition. *See* Pet. for Cert., *United States v. Wheeler*, No. 18-420 (Sup. Ct.), 2018 WL 5017116 (denied Mar. 18, 2019). The government recognizes that binding Seventh Circuit precedent forecloses this argument but notes the government's position to preserve the issue for further appellate review if warranted.

### A.    Relevant Background

### 1.    Evidence at Trial

Before trial, the government disclosed to the defense a report from the government's expert, Dr. Thomas Ryan, containing a risk assessment that evaluated Lee's future dangerousness using, among other things, a psychological test called the Hare psychopathy checklist revised (PCL-R). *See* Tr. 7755, 7825-27. Later, during trial, on cross-examination of defense expert Dr. Cunningham, the government elicited testimony that "psychopath" is a term that is recognized within forensic psychology and is measured by the PCL-R. Tr. 7754.

Lee made a motion in limine in the midst of Dr. Cunningham's cross-examination, asking the Court to exclude testimony by Dr. Cunningham (during cross-examination) or Dr. Ryan (during rebuttal) about psychopathy or Lee's future dangerousness, arguing that those were improper topics for cross-examination or rebuttal because Dr. Cunningham had not performed a risk assessment or testified about Lee's future dangerousness. Tr. 7746-48, 7755-58; 5/13/1999 Tr. 1-29; *see Lee*, 274 F.3d at 489-90. The government responded that it did not intend to present evidence about Dr. Ryan's risk assessment of Lee but that Dr. Cunningham's direct testimony had, to a certain extent, opened the door to some questioning about psychopathy. 5/13/1999 Tr. 2-7, 23-24. The Court determined that it would permit the

government to proceed with questioning Dr. Cunningham about psychopathy but would "cut off" questioning if it exceeded the permissible scope of cross-examination. *Id.* at 27.

After cross-examination continued, Dr. Cunningham stated several times that the PCL-R is predictive of "criminal activity and violence in the community" but that it had not "been shown to be predictive of correctional institutional violence." Tr. 7812, *see* Tr. 7795-98, 7806-19. The government elicited testimony that Dr. Cunningham had reviewed Dr. Ryan's report and that Dr. Ryan had "identified [Lee] by his scoring of the PCL-R as falling into the psychopathy range." Tr. 7825-28. Dr. Cunningham testified that he himself had not used the PCL-R to evaluate Lee, and he testified that he had used the PCL-R to examine one capital defendant in 1996 but subsequently "studied it more thoroughly" and "quit using the instrument in capital cases" because he "did not find it to be adequately research supported to tell me . . . how is this person going to act in prison." Tr. 7827-29.

When Dr. Cunningham's cross-examination ended, the district court confirmed that Lee's counsel had interposed an ongoing objection to cross-examination of Dr. Cunningham about psychopathy. Tr. 7832. The court stated that it had "probably permitted the government to go much farther on cross-examination than is proper." Tr. 7836. The court then granted Lee's "motion in limine with respect to the issue of psychopathy, the Hare

21

psychopathy test, and any reference to the defendant being a, quote, psychopath, unquote, on the basis that such would not be proper rebuttal." Tr. 7836. Accordingly, when the government subsequently called Dr. Ryan as a rebuttal witness, he did not testify about psychopathy, let alone provide an opinion (which would have been contrary to Dr. Cunningham's testimony) that Lee's score on the PCL-R indicated that he posed a risk of future dangerousness not only in the community, but also while in prison. *See* Tr. 7906-31.

### 2.    Post-Trial Motion for a New Sentencing Hearing

The Arkansas district court granted Lee's post-trial motion for a new sentencing hearing, concluding, as relevant here, that the cross-examination of "Dr. Cunningham went well beyond the mitigation evidence raised by Dr. Cunningham on direct and ultimately became an expanded encore presentation of the Government's case for future dangerousness." *Lee*, 89 F. Supp. 2d at 1028. The court stated that, "[w]hile the psychopath evidence may, to a certain extent, have been proper cross-examination as it was an alternate explanation for [Lee's] alleged violence, the presentation of the psychopath evidence turned into future dangerousness and risk assessment evidence, thus going beyond the scope of proper cross-examination." *Id.* at 1029-30. Because "Lee chose neither to perform a risk assessment analysis nor to present rebuttal evidence on the future dangerousness aggravating

22

factor," the Court concluded, he was "ill-equipped to handle the Government's discussion of psychopathy." *Id.* at 1030. The Court held that, "[i]n failing to restrict the Government's statements and inquiries regarding psychopathy more than it did, the Court erred, and, as a result, Defendant Lee did not receive a fair sentencing hearing." *Id.* at 1031.

The Eighth Circuit reversed and reinstated Lee's death sentence, determining, as relevant here, that the district court did not err in allowing the government to elicit testimony from Dr. Cunningham "on the issue of psychopathy," even if the testimony exceeded the scope of Dr. Cunningham's direct examination. *Lee*, 274 F.3d at 495. The court explained that the "Federal Death Penalty Act (FDPA) erects very low barriers to the admission of evidence at capital sentencing hearings" and allows a district court to "exclude evidence only 'if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.'" *Id.* at 494 (quoting 18 U.S.C. § 3593(c)) (emphasis omitted). The court determined that "Lee's potential psychopathy was probative of his future dangerousness." *Id.* at 495. And the court found that no "threat of unfair prejudice" existed because "Lee opened the door to testimony concerning psychological diagnosis" by "introducing a mental health expert in defense." *Id.*

23

### 3.    Lee's § 2255 Motion

After the Arkansas district court reinstated the death penalty on remand and the Eighth Circuit affirmed Lee's conviction and sentence on direct appeal, *see Lee*, 374 F.3d at 654, Lee filed a motion to set aside, reduce, or vacate his sentence under 28 U.S.C. § 2255, Ark. Dkt. 1118. As relevant here, Lee claimed that he received ineffective assistance of counsel at sentencing because his lawyers "failed to fully and continuously object during the government's improper cross-examination" of Dr. Cunningham. Ark. Dkt. 1118, at 33. According to Lee, "the government exceeded the proper scope of cross examination and made Dr. Cunningham their own expert witness on the issue of [his] future dangerousness." *Id.* Lee asserted in a footnote that Dr. Ryan no longer believes that the PCL-R is "an appropriate instrument to be utilized in evaluating the future danger of capital defendants," but Lee did not offer any evidence in support of that assertion or explicitly explain its relevance to his ineffective-assistance claim. *Id.* at 34 n.14.

The Arkansas district court denied Lee's § 2255 motion. *Lee*, 2008 WL 4079315, at *1. As relevant here, the court rejected Lee's claim that his counsel had been ineffective in failing to seek to limit the government's cross-examination of Dr. Cunningham. *Id.* at *46-*47. The court noted that "[t]he subject of Dr. Cunningham's testimony has received extensive scrutiny, both post-trial and on appeal." *Id.* at *46. The court explained that "[t]rial counsel

24

performed exactly as [Lee] now argues that they should have—by interposing a continuing objection to said cross-examination of Dr. Cunningham." *Id.* The court observed that "the merits of this issue, which have been ruled on by the Eighth Circuit, may not be revisited on collateral review." *Id.* And the court explained that "trial counsel may not be faulted because their best efforts to limit Dr. Cunningham's testimony on cross-examination"—by not having Dr. Cunningham "perform any risk assessment or offer any testimony on direct as to a formal diagnosis of future dangerousness"—"failed." *Id.* at *47.

### 4.    Rule 59(e) Reconsideration Motion

Lee filed a motion under Federal Rule of Civil Procedure 59(e), asserting numerous grounds for reconsideration. Ark. Dkt. 1165. As relevant here, Lee argued for the first time that he had received ineffective assistance of counsel at sentencing because his counsel did not object to the psychopathy testimony elicited during cross-examination of Dr. Cunningham as "scientifically invalid and non-probative of the issue of future dangerousness." Ark. Dkt. 1165, at 20. Petitioner attached affidavits from psychologists stating their view that the research is insufficient to conclude that the PCL-R accurately predicts future dangerousness in prison. *See* Ark. Dkt. 1165-7. Petitioner also attached an affidavit from Dr. Ryan stating that he no longer believed that the PCL-R was an appropriate tool to assess an individual's future dangerousness in prison. Ark. Dkt. 1165-4.

25

The district court denied the reconsideration motion and, as relevant here, rejected the psychopathy-related ineffective-assistance claim on three alternative grounds. *Lee*, 2010 WL 5347174, at \*5-\*6. First, the court concluded that the claim "should, in the Court's view, be deemed successive" and therefore barred by the gatekeeping restrictions on second or successive § 2255 motions. *Id.* at \*5; *see* 28 U.S.C. § 2255(h). Second, the court concluded that Lee could not use a Rule 59(e) reconsideration motion to present new theories and evidence that he could have presented before the court denied the § 2255 motion. 2010 WL 5347174, at \*5-\*6. The court found that Lee failed to explain why the 65 pages of affidavits Lee submitted with his Rule 59(e) motion were not provided to the court before it ruled on his § 2255 motion, and the court explained that the single footnote in Lee's § 2255 motion did not put the court on notice of the ineffective-assistance claim Lee fleshed out over the course of 25 pages in his Rule 59(e) motion. *Id.* at \*5-\*6. Third, the court determined that Lee's ineffective-assistance claim was "lacking in merit." *Id.* at \*5. The court found that Lee's trial counsel could not be faulted for failing to "challenge the scientific underpinnings" of using the PCL-R to assess the future dangerousness of capital defendants at the time of his sentencing hearing in 1999 when Dr. Ryan himself had not disavowed his use of the PCL-R in capital cases until a year later. *Id.* at \*6.

26

### 5.     Lee's § 2255 Appeal

The district court and the Eighth Circuit granted a certificate of appealability on two issues not relevant here but denied a certificate of appealability on all other issues, including on Lee's claim that he received ineffective assistance because his lawyers failed to seek exclusion of testimony about "psychopathy and concomitant predisposition towards violence" as "scientifically invalid." Motion to Expand Certificate of Appealability at 70-90, *United States v. Lee*, No. 11-1380 (8th Cir.) (filed June 20, 2011); *see Lee*, 715 F.3d at 217.

The Eighth Circuit then affirmed the denial of Lee's § 2255 motion. *Lee*, 715 F.3d at 217. As relevant here, although the Court had denied a certificate of appealability on the issue, Lee argued that "the government's evidence of future dangerousness was premised on junk science." *Id.* at 224. The Eighth Circuit determined that the issue was "beyond the scope of our certificate of appealability" but went on to state that "we have previously concluded that there was no 'threat of unfair prejudice' from the elicitation in this case of psychopathy evidence by the government during sentencing." *Id.* The Court "conclude[d] that the jury properly considered the aggravating factors advanced by the government in determining that Lee should be sentenced to death." *Id.*

### 6.     Lee's First Rule 60(b) Motion

In 2013, Lee filed a motion for relief from judgment under Federal Rule of Civil Procedure 60(b), again asserting that he received ineffective assistance at sentencing because his counsel failed to challenge, as "unreliable and scientifically invalid," testimony that diagnosis as a psychopath demonstrates a risk of future dangerousness in prison. Ark. Dkt. 1230, at 46; *see id.* at 29-48. Lee argued that he should be permitted to raise this ineffective-assistance claim in a Rule 60(b) motion because the lawyers who represented him in his § 2255 proceedings negligently failed to present facts in support of that claim in his § 2255 motion and instead provided those facts for the first time in the Rule 59(e) motion. *Id.* at 13-15, 20-22.

The Arkansas district court denied Lee's motion for lack of jurisdiction, concluding that the motion amounted to an uncertified second or successive motion for collateral relief under 28 U.S.C. § 2255, *Lee*, 2014 WL 1093197, at *4-*5, and the Eighth Circuit affirmed, *Lee*, 792 F.3d at 1022. The Eighth Circuit noted that, according to Lee, "his counsel made the [ineffective-assistance] claim in his initial § 2255 petition" but "omitted the required evidentiary support." *Id.* at 1023. The Eighth Circuit then explained that, under the Supreme Court's decision in *Gonzalez v. Crosby*, 545 U.S. 524 (2005), a Rule 60(b) motion seeking to reopen a claim to cure "omissions by

28

federal habeas counsel" is a second or successive § 2255 motion. *Id.* at 1023-24.

The court rejected Lee's reliance on *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), explaining that "[t]hose cases are inapposite" because "they involved federal habeas review of state court decisions under § 2254." *Lee*, 792 F.3d at 1024. The court also explained that in both *Martinez* and *Trevino*, "the habeas petitioners adequately raised their claims of ineffective assistance of trial counsel in their initial federal habeas petitions," whereas here, Lee's § 2255 motion failed to adequately support his ineffective-assistance claim, and "[t]he district court went on to reach and deny [petitioner's] claim on the merits." *Id.* at 1024-25.

### 7.    Lee's Fourth Rule 60(b) Motion

As noted above, after the government set December 9, 2019, as the date to carry out Lee's execution, Lee filed his habeas petition in this case in which he again raised the ineffective-assistance claim that he had asserted in the Arkansas district court in his Rule 59(e) motion in 2008 and in his Rule 60(b) motion in 2013. Dkt. 1, at 6-30. Lee also sought to raise this same ineffective-assistance claim in another Rule 60(b) motion (his fourth) that he filed in the Arkansas district court three calendar days (and one business day) before his scheduled execution. Ark. Dkt. 1352.

29

Lee accompanied his Rule 60(b) motion with a motion to stay his execution pending the Supreme Court's ruling in *Banister v. Davis*, No. 18-6943 (S. Ct.), arguing that *Banister* might permit the district court to consider the ineffective-assistance claim again. Dkt. 1353. The district court granted a stay, but the Eighth Circuit later vacated it, concluding that the district court applied the wrong legal standard. *Lee*, 960 F.3d at 1024-25. In reaching that conclusion, that court noted that "Lee already received one full round of review on his present claim of ineffective assistance: the district court ruled that the claim was 'lacking in merit,' and this court denied a certificate of appealability on that issue." *Id.* at 1025 (quoting *Lee*, 2010 WL 5347174, at *5-*6).

On the same day the Eighth Circuit vacated the district court's stay, the Supreme Court decided *Banister v. Davis*, 140 S. Ct. 1698 (2020), and on remand the district court denied Lee's Rule 60(b) motion. Dkt. 1404. The court determined that, although *Banister* established that the court had erroneously applied the gatekeeping restrictions for successive § 2255 motions to Lee's original Rule 59(e) motion, the court had nonetheless also denied the Rule 59(e) on two additional grounds, including a determination that Lee's ineffective-assistance claim "failed on the merits." Dkt. 1404, at 12-13. Insofar as Lee sought to challenge that merits determination, the court concluded, his Rule 60(b) motion was a second or successive § 2255 motion,

30

and in addition, because of the merits determination, Lee also could not show extraordinary circumstances warranting relief under Rule 60(b). *Id.* at 13, 15.

## B. Section 2255 Was Not Inadequate or Ineffective to Raise Lee's Ineffective-Assistance Claim

Lee contends that he is entitled to raise anew, in a § 2241 habeas petition in a different court, the previously rejected claim that he received ineffective assistance at trial because his lawyers failed to challenge psychopathy evidence as a scientifically invalid predictor of future dangerousness in prison, asserting this his § 2255 motion in the sentencing court was an inadequate or ineffective mechanism for pressing it. That contention lacks merit. Lee had a full opportunity to raise this ineffective-assistance claim in his § 2255 motion, and any missteps by his lawyers in failing to do so did not render § 2255 inadequate or ineffective. The asserted mistakes of postconviction counsel is not a valid basis for a § 2241 petition. Moreover, even though Lee belatedly presented new facts and theories in support of the ineffective-assistance claim via a Rule 59(e) motion, the district court nonetheless considered and rejected Lee's claim on the merits, and the court of appeals denied a certificate of appealability. Lee cannot claim that § 2255 was inadequate or ineffective to raise an ineffective-assistance claim for which he received one full round of review in the district court and the Eighth Circuit.

31

### 1.     Section 2255 Was Not Inadequate or Ineffective Because of Shortcomings by Lee's § 2255 Lawyers

Lee "had an unobstructed procedural shot," *Davenport*, 147 F.3d at 609, at raising his ineffective-assistance claim at the time he filed his § 2255 motion. A federal defendant, such as Lee, may raise any ineffective-assistance claim he wishes for the first time in a § 2255 motion. *See Massaro v. United States*, 538 U.S. 500, 503-05 (2003); *Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005). As Lee acknowledges (Br. 25-28), his lawyers knew—or should have known—all the facts needed to present the ineffective-assistance claim in his § 2255 motion. And the law that applied to Lee's ineffective-assistance claim was settled well before Lee's § 2255 motion in *Strickland v. Washington*, 466 U.S. 668 (1984).

By Lee's own account, the only reason he did not sufficiently present his ineffective-assistance claim in his § 2255 motion was because his lawyers "bungled" the litigation. Br. 25. According to Lee, they "failed to present evidence available to establish" the psychopathy-related ineffective-assistance claim. Br. 25. But any shortcomings by the lawyers who represented Lee in his § 2255 motion did not render § 2255 inadequate or ineffective to raise Lee's claim. Under this Court's precedent, the saving clause "generally requires 'a *structural problem* in § 2255 [that] forecloses even one round of effective collateral review,' unrelated to the petitioner's

32

own mistakes." *Poe v. LaRiva*, 834 F.3d 770, 772 (7th Cir. 2016) (quoting *Taylor v. Gilkey*, 314 F.3d 832, 835 (7th Cir. 2002)) (emphasis added). And "where a prisoner had an opportunity to present his claim properly in his first § 2255 petition, but failed to do so, any 'ineffectiveness' of his current § 2255 petition is due to him and not to § 2255." *United States v. Barrett*, 178 F.3d 34, 53 (1st Cir. 1999).

This Court's recent decision in *Purkey v. United States*, No. 19-3318, --- F.3d ---, 2020 WL 3603779 (7th Cir. July 2, 2020), reaffirms these principles and is controlling here. In that case, the defendant raised multiple ineffective-assistance claims in his § 2255 motion, and after the district court denied those claims and the Eighth Circuit affirmed, the defendant filed a § 2241 habeas petition in which he sought to raise three new ineffective-assistance claims that he had failed to raise in his § 2255 motion. *Id.* at *3-*4, *8. According to the defendant, he did not raise those three claims in his § 2255 motion because of negligence by the lawyers who represented him in his § 2255 proceedings. *Id.* at *8-*10. The defendant "argue[d] that section 2255 is structurally inadequate to test the legality of a conviction and sentence any time a defendant receives ineffective assistance of counsel in his one permitted [§ 2255] motion." *Id.* at *7.

This Court rejected that argument. The Court explained that "nothing formally prevented [the defendant] from raising each of the three" ineffective-

33

assistance claims in his § 2255 motion. 2020 WL 3603779, at *8. "[T]he mechanisms of section 2255 gave him an opportunity to complain about ineffective assistance of trial counsel, and he took advantage of that opportunity," the Court explained, and "[t]here was nothing structurally inadequate or ineffective about section 2255 as a vehicle to make those arguments." *Id.* at *10.

This case is indistinguishable from *Purkey* with respect to the saving clause. All of the facts needed to support Lee's ineffective-assistance claim were, by Lee's admission (Br. 25-26), known and available to the lawyers who represented him on collateral review. There was nothing that prevented Lee from raising the psychopathy-related ineffective-assistance claim in his § 2255 motion; indeed, Lee asserted those facts in support of a claim of ineffective-assistance at sentencing in a motion to reconsider the denial of his § 2255 motion, Dkt. 1165, at 19-46, and the district court ultimately found the claim to be meritless, *Lee*, 2010 WL 5347174, at *5-*6. Section 2255 was not an inadequate or ineffective vehicle to make those arguments, and § 2255(e) forecloses Lee from raising this ineffective-assistance claim in a § 2241 habeas petition.

Lee barely discusses *Purkey*, let alone attempts to distinguish that case. Instead, Lee suggests (Br. 28-30, 36-38) that § 2255 was inadequate or ineffective to raise his ineffective-assistance claim because years later, in

34

2014 and 2015, the district court and the Eighth Circuit rejected his attempt to reopen his § 2255 motion under Rule 60(b) on the basis of the Supreme Court's decisions in *Martinez* and *Trevino*. *See supra* p. 29. But *Martinez* and *Trevino*, which addressed the circumstances under which a state prisoner's claim of ineffective assistance of counsel can be raised on federal habeas review notwithstanding procedural default, had no effect on whether § 2255 was "inadequate of ineffective" for Lee. Both before and after *Martinez* and *Trevino*, Lee could raise an ineffective-assistance claim for the first time in a § 2255 motion without any need to overcome procedural default. *Fuller*, 398 F.3d at 648. Thus, Lee had the same unobstructed procedural shot to raise the psychopathy-related ineffective-assistance claim in his § 2255 motion before and after *Martinez* and *Trevino*; his lawyers simply gave the claim scant attention. But any shortcomings by Lee's lawyers do not represent a structural defect in § 2255 that, under this Court's precedents, could have rendered § 2255 inadequate or ineffective to raise that ineffective-assistance claim.

> **2.** **Section 2255 Was Not Inadequate or Ineffective Because Lee Received a Full Round of Review Despite Any Shortcomings by His Lawyers**

Lee's argument that § 2255 was inadequate or ineffective to raise his ineffective-assistance claim also fails for further reasons not present in *Purkey*. In *Purkey*, the defendant's § 2255 lawyers failed to raise three

ineffective-assistance claims, and those claims were never addressed on the merits by the district court in his § 2255 case or on appeal. Here, Lee's § 2255 lawyers raised his ineffective-assistance claim, albeit belatedly, in a Rule 59(e) motion, and the district court determined that the claim lacked merit. *Lee*, 2010 WL 5347174, at \*5-\*6. The court of appeals then denied Lee's request for a certificate of appealability on that issue. *Lee*, 715 F.3d at 217. Thus, as the Eighth Circuit expressly stated a little over a month ago, "Lee already received one full round of review on his present claim of ineffective assistance: the district court ruled that the claim was 'lacking in merit,' and this court denied a certificate of appealability on that issue." *Lee*, 960 F.3d at 1025 (quoting *Lee*, 2010 WL 5347174, at \*5-\*6). It cannot be said that § 2255 was inadequate or ineffective to raise a claim for which Lee received a full round of review on the merits in the district court and the court of appeals.

Lee emphasizes the two alternative grounds that the district court identified for denying Lee's Rule 59(e) motion, but he does not acknowledge that the district court also determined that his ineffective-assistance claim lacked merit. Lee may disagree with the district court's merits determination and the Eighth Circuit's denial of a certificate of appealability, but he cannot deny that he received a merits determination. *See* Ark. Dkt. 1404, at 12 ("Having reviewed Judge Eisele's Rule 59(e) Order, the Court determines that Judge Eisele made alternative merits findings on Mr. Lee's allegations of

36

error."). And because Lee received a full round of review on the merits of his ineffective-assistance claim in the § 2255 proceedings in the district court and the Eighth Circuit, it necessarily follows that § 2255 was not inadequate or ineffective to raise that claim.

### III.    Lee's *Brady* and *Napue* Claims Are Not Cognizable Under the Saving Clause

Lee's habeas petition renews *Brady* and *Napue* claims that Lee raised in a successive § 2255 motion in the Arkansas district court and the Eighth Circuit. Lee cannot show that § 2255 was inadequate or ineffective to raise those claims.

### A.    Relevant Background

### 1.    Sentencing Hearing

As noted, at Lee's sentencing hearing, as part of its proof of Lee's future dangerousness, the government presented evidence about Lee's involvement in the murder of Joey Wavra. *See* Tr. 7389-7461, 7470. The government presented evidence that Lee and his cousin, David Patton, attended a social gathering with Wavra in Oklahoma in July 1990 where the attendees consumed drugs and alcohol. Tr. 7408-12, 7421-25. Wavra angered Lee by, among other things, urinating on the host's couch. Tr. 7412-13, 7426-31, 7456. Lee and Patton physically beat the intoxicated Wavra—Lee hit Wavra repeatedly with his hands and feet and a wooden stick—and then forced

37

Wavra down into a manhole. Tr. 7412-14, 7426-40. There was "talk of a coin toss to see if [Wavra] would live or die." Tr. 7414. Patton went down the manhole with Wavra while Lee retrieved a rope and a knife and handed them down to Patton in the manhole. Tr. 7414-15, 7440-44. Lee placed Wavra's clothing in a plastic garbage bag after Patton threw them up from the manhole. Tr. 7444-45. Patton spent about another half hour down in the manhole with Wavra and used the knife to stab Wavra repeatedly in the body and slash open his throat, killing him. Tr. 7395-96, 7403-07, 7446. Patton was convicted of first-degree murder in Oklahoma state court, and Lee pleaded guilty to robbery. Tr. 7470. Lee later told a friend in 1995 that he and "his cousin years back had beat somebody up real bad and slit his throat, and they weren't sure if the guy died from beating him up or from slashing his throat." Tr. 7458.

In closing arguments, the government argued that Lee's past violent conduct demonstrated his future dangerousness and "[a]n example of that is that behavior that happened during the Joey Wavra murder." Tr. 7962. The government argued that Lee "was the one who beat" Wavra, "the one who hit him," "the one who kicked him," "the one who opened the manhole," "the one who forced him to go down," "the one who brought the rope," and "the one who took the knife and gave it to his cousin to do the beating." Tr. 7962. The government acknowledged that Lee "didn't wield that knife" but argued that

38

Lee knew "what he was doing" by "taking the knife and giving it to" his cousin, and the government "suggest[ed]" that "both legally and morally the blood of Joey Wavra's hands is on Danny Lee." Tr. 7962-63. The government stated that Lee "got this . . . incredible deal," a "plea bargain," and "pled guilty to a robbery." Tr. 7963. The government argued that "[u]sually you commit a murder, and you get sent away for a very long time," "[a]nd you don't get the opportunity for a do over," but Lee "got a do over." Tr. 7963-64. "He got the opportunity to say, my God, what have I done? Look where all this led me. He had the opportunity to say, I made a mistake, but I got an opportunity to turn myself around." Tr. 7964. The government argued that the jury "should consider" these circumstances "in distinguishing Lee from Kehoe," his accomplice in the Mueller murders, "because Lee has been here before." Tr. 7964. "Lee has stood in the court of justice. Lee has had the opportunity to regret, and Lee has had that opportunity to change his ways." Tr. 7964.

### 2.　　Successive § 2255 Motion

In 2018, Lee filed a § 2255 motion in the Arkansas district court arguing that newly discovered evidence showed that he did not plead guilty to robbery in the Oklahoma case as a result of a favorable plea deal but rather because a judge found there was insufficient evidence to charge him with first-degree murder. Ark. Dkt. 1297, at 6, 52-59. Lee relied solely on a

39

two-page fee application from his appointed counsel in the Oklahoma case. *see* Dkt. 1-13 (fee application). The document contained the following notation: "The matter came on for hearing before Judge Hall; District Attorney called witness; hearing held; Court finds crime of Murder I not established by evidence; Court reccomends [sic] a Dismissal of Murder I charges and State consider [sic] refiling on charge of Robbery I." *Id.* at 2. According to Lee, this fee application showed that the government in this case failed to turn over exculpatory information, in violation of *Brady*, and presented false information at trial, in violation of *Napue*.

The Arkansas district court concluded that it lacked jurisdiction over Lee's § 2255 motion because it was a second or successive motion that lacked precertification by the court of appeals under 28 U.S.C. § 2255(h). Ark. Dkt. 1313, at 8-17. The court went on to state that "*assuming* that the Oklahoma state court held at a preliminary hearing that the evidence was insufficient to establish probable cause that Lee was guilty of murdering Joey Wavra," that evidence would be material under the *Brady* standard because there is a reasonable likelihood the evidence would have changed the outcome of the sentencing hearing, *id.* at 14 (emphasis added), but the court did not address the other elements of a *Brady* or *Napue* claim. And in rejecting Lee's attempt to characterize the motion as a Rule 60(b) motion exempt from the gatekeeping provisions for successive § 2255 motions, the court emphasized

that Lee had not "demonstrated that any failure to disclose . . . the Oklahoma judicial finding prevented him from fully and fairly litigating his initial § 2255 claim" because "the Oklahoma court record upon which he now relies is public information." *Id.* at 19.

### 3.     Habeas Petition

Lee's habeas petition renews the *Brady* and *Napue* claims he raised in the Arkansas district court. Lee contends (Br. 48) that § 2255 was inadequate and ineffective to raise his *Brady* and *Napue* claims because the government allegedly suppressed evidence about what happened at the preliminary hearing in the 1990 Oklahoma case. Lee relies entirely on the fee application from his lawyer, and from that application, he posits a recreation of the preliminary hearing before the Oklahoma judge. According to Lee, the judge, at that hearing, "review[ed] . . . all the prosecution's evidence" and made a "judicial ruling that the prosecution could not even establish probable cause on a murder charge," Dkt. 1, at 47 (citing fee application), and "reject[ed] . . . any murder charge," *id.* at 48.

### B.     Section 2255 Was Not Inadequate or Ineffective to Raise Lee's *Brady* and *Napue* Claims

Section 2255 was not inadequate or ineffective to raise the *Brady* and *Napue* claims asserted in Lee's habeas petition. To the contrary, the information about the Oklahoma hearing that Lee claims was suppressed

41

was in fact known or at least readily available to Lee at the time he filed his § 2255 motion. Lee therefore could have used that information to assert whatever claim he wished in his § 2255 motion. As the Arkansas district court concluded, Lee cannot show that "any failure to disclose . . . the Oklahoma judicial finding prevented him from fully and fairly litigating his initial § 2255 claim" because "the Oklahoma court record upon which he now relies is public information." Dkt. 1313, at 19. Lee therefore cannot rely on information about the Oklahoma hearing to show that § 2255 was inadequate or ineffective.

Lee has elsewhere conceded that the information about the 1990 Oklahoma preliminary hearing that he now uses to buttress his *Brady* and *Napue* claims was available to him at the time of his trial. In a letter to Attorney General Eric Holder dated November 4, 2014, Lee asserted—relying on the same fee application from the Oklahoma case that he relies on here— that he was not prosecuted for murder in the Oklahoma case "because a judge who heard the prosecution's case concluded that Mr. Lee was not liable for the homicide." Letter from Ruth E. Friedman to Attorney General Eric Holder, p. 15 (Nov. 4, 2014) (on file with government). By Lee's own account, this information "was available to, yet never pursued by, [his] trial or post-conviction counsel." *Id.* at 14. Lee thus cannot now claim that the government's "suppression" of evidence rendered § 2255 inadequate or

42

ineffective when he concedes that the evidence was available to him at trial and when he filed his § 2255 motion.

Lee also knew what happened at the 1990 Oklahoma hearing because he and his lawyer were present at the hearing and therefore would have known what transpired. The government could not suppress information that was disclosed to Lee and his lawyer, and because Lee knew the information, he could have used it to support a claim in his § 2255 motion. The presence of Lee and his lawyer at the hearing further precludes the determination that § 2255 was inadequate or ineffective to raise Lee's *Brady* and *Napue* claims.

This Court's decision in *Webster*, *supra*, makes clear that § 2255(e) forecloses the *Brady* and *Napue* claims in Lee's habeas petition. *Webster* is the only case in which this Court has concluded that § 2255 may be inadequate or ineffective if a defendant was foreclosed from raising a claim based on newly discovered evidence. The Court there concluded that a prisoner claiming that the Constitution makes him "categorically ineligible for the death penalty, based on newly discovered evidence, may not be barred from doing so by" § 2255(e). 784 F.3d at 1140. But the Court emphasized that its decision was limited to newly discovered evidence that "existed before the time of the trial" and was unavailable "despite diligence on the part of the defense," not because of "missteps by" the defense. *Id.* (emphasis omitted); *see id.* at 1141 (defendant must present "previously existing evidence . . . that

43

counsel did not uncover despite diligent efforts"). The Court anticipated that it will be a "rare case" in which these conditions are satisfied. *Id.* at 1140.

As an initial matter, *Webster*, in order to avoid a "flood" of § 2241 petitions, limited its holding to newly discovered evidence showing that the defendant is "constitutionally ineligible" for the death penalty because of age or intellectual disability. *Id.* at 1140 n.9. The court concluded that because the Supreme Court had not decided that the Eighth Amendment barred execution of minors or the intellectually disabled at the time that Congress enacted AEDPA's restrictions on second or successive § 2255 motions, there is a reason to construe the saving clause to permit habeas petitions raising those claims based on newly-discovered evidence. *See* 784 F.3d at 1139. The claims that Lee seeks to raise, however, are based on *Brady* and *Napue*, longstanding decisions, and defendants have long raised *Brady* and *Napue* claims on the basis of newly discovered evidence. If Congress had meant to allow defendants to raise such claims in second or successive § 2255 motions, it could have expressly provided as much in AEDPA. Instead, AEDPA permits second or successive motions based on newly discovered evidence, but only if that evidence, if credited, would establish the defendant's innocence by "clear and convincing evidence." 28 U.S.C. § 2255(h)(1). Thus, defendants may raise *Brady* and *Napue* claims based on newly discovered evidence in second or successive § 2255 motions, but only if they present compelling

44

evidence of their innocence. *See United States v. Buenrostro*, 638 F.3d 720, 725 (9th Cir. 2011) (per curiam). Allowing the *Brady* and *Napue* claims that Lee asserts in this case to proceed under § 2241 would effectively void these congressionally-mandated limitations.

In any event, even assuming *Webster* extends to *Brady* and *Napue* claims, the information about the Oklahoma hearing does not qualify as newly discovered evidence under *Webster,* as this Court concluded when it vacated the district court's stay order in this case. *Lee*, 2019 WL 6718924, at *1. Lee's allegations of what took place at the preliminary hearing in the Oklahoma court derive solely from the fee application his lawyer filed in that case, and that fee application was (and is) a publicly available document accessible to anyone who exercises a modicum of diligence. Moreover, insofar as Lee alleges that the newly discovered evidence is not his lawyer's fee application but rather the judge's findings at that hearing (as recreated by Lee from the fee application), Lee and his lawyer were present at that hearing, and therefore the judge's findings were not only available to Lee but were actually provided to him at that hearing.

Lee nonetheless contends (Br. 57-58) that *Webster* supports his claim because *Webster* determined that the results of psychological tests could be newly discovered evidence even though Webster was present at the testing, and therefore the Oklahoma judge's findings may qualify as newly discovered

evidence even though Lee was present at the hearing at which the judge allegedly made those findings. But the defendant in *Webster* did not receive the results of the testing, whereas Lee was present when the Oklahoma judge allegedly announced his findings, and those findings would have been announced on the record in open court. Moreover, not only was Lee present, but so was his lawyer, and "an attorney is the agent of her client, and an agent's knowledge is imputed to her principal." *Washington v. Parkinson*, 737 F.3d 470, 473 (7th Cir. 2013). Any findings the Oklahoma judge announced at Lee's 1990 preliminary hearing in the presence of Lee and his lawyer were far from "unavailable."

Lee contends (Br. 58-61) that the district court erroneously applied a diligence requirement to his *Brady* claim because, according to Lee, "the Supreme Court has explicitly rejected the notion that defense counsel's lack of diligence in discovering exculpatory information relieves the prosecution of its constitutional duty of disclosure" under *Brady*. Br. 59. The government does not agree with Lee's characterization of the *Brady* standard, but regardless, Lee cannot substitute the standard for a substantive *Brady* claim itself in place of the threshold requirements that a defendant must satisfy under the saving clause to raise any substantive claim of legal error in a § 2241 habeas petition. Even assuming that a substantive *Brady* claim does require a showing of diligence, it is still the case that under *Webster*, in order

46

for a defendant to satisfy the requirements of the saving clause, a defendant seeking to challenge his sentence in a § 2241 petition based on newly discovered evidence must show that the evidence was unavailable despite diligence on the part of the defense. Thus, even assuming *Webster* applies to claims other than claims of categorical ineligibility for the death penalty based on age or intellectual disability, Lee must satisfy the *Webster* diligence requirement to raise a *Brady* claim in a § 2241 habeas petition based on newly discovered evidence, regardless of the substantive requirements for a *Brady* claim.

In short, because the information about the Oklahoma hearing that Lee claims the government suppressed was in fact known or readily available to Lee, § 2255 was not inadequate or ineffective to raise *Brady* or *Napue* claims based on that information. The saving clause therefore forecloses Lee's *Brady* and *Napue* claims.

## IV.   The Claims in Lee's Habeas Petition Lack Merit

Section 2255(e) forecloses Lee from raising the ineffective-assistance claim and the *Brady* and *Napue* claims contained in his habeas petition regardless of the merits of those claims. But even if the saving clause permitted Lee to raise those claims in his habeas petition, he would not be entitled to relief on the merits. The government does not address every aspect of Lee's claims and only highlights some of the reasons that they fail.

47

### A.    The Ineffective-Assistance Claim Lacks Merit

#### 1.    The Psychopathy Testimony at Lee's Trial Was, by Lee's Own Account, Correct and Accurate

Lee does not dispute that the PCL-R is predictive of future dangerousness in the community. *See, e.g.*, Ark. Dkt. 1165-6, at 2. Lee instead contends that studies do not establish a scientifically valid relationship between a high score on the PCL-R and future dangerousness in prison. *See, e.g.*, Dkt. 1, at 7, 10.

The fundamental flaw in Lee's argument is that there was no expert opinion testimony at his trial that a diagnosis as a psychopath using the PCL-R predicted future dangerousness in prison. The only evidence about psychopathy came in through Lee's own expert, Dr. Cunningham, during cross-examination by the government. And Dr. Cunningham never testified that Lee's diagnosis as a psychopath predicted his future dangerousness in prison. To the contrary, Dr. Cunningham expressly disclaimed using the PCL-R to predict future dangerousness in prison. Dr. Cunningham acknowledged that a diagnosis as a psychopath using the PCL-R was associated with a high risk of violence in the community, *see, e.g.*, Tr. 7806, 7807, 7809, 7810, 7812, 7815, but repeatedly emphasized that the test had "not yet been shown to be predictive of correctional institutional violence," Tr. 7812; *see* Tr. 7806-07, 7815-16, 7818-19, 7828-29.

Although Dr. Ryan's expert report, which was turned over to the defense before trial, contained his opinion that Lee's diagnosis as a psychopath indicated Lee would present a higher risk of future dangerousness in prison, that report was not admitted into evidence, and Dr. Cunningham did not tell the jury during cross-examination about Dr. Ryan's opinion linking Lee's psychopathy diagnosis with future dangerousness in prison. And before Dr. Ryan testified on rebuttal, the district court ruled that the government could not present any more evidence about psychopathy, Tr. 7836, and therefore Dr. Ryan did not mention psychopathy during his testimony.

In short, Lee's claim that the jury heard expert opinion evidence linking psychopathy and future dangerousness in prison is belied by the record. The only expert opinion evidence the jury heard about psychopathy came from Lee's own expert and that testimony, by Lee's own account, was entirely accurate.

### 2.   The Psychopathy Testimony Was Admissible

The psychopathy testimony that came in at Lee's trial was also properly admitted. The cross-examination of Dr. Cunningham on the topic of psychopathy was relevant to probe Dr. Cunningham's testimony that Lee's traumatic life experiences resulted in his violent criminal behavior, *see, e.g.*, Tr. 7742, because psychopathy provided an alternative explanation for that

49

violent behavior. Moreover, as the Eighth Circuit correctly concluded, "Lee's potential psychopathy was probative of his future dangerousness." *Lee*, 274 F.3d at 495. Dr. Cunningham testified, and Lee does not dispute, that the PCL-R is predictive of dangerousness in the community. The jury was entitled to consider that evidence when evaluating the aggravating factor of future dangerousness. *See United States v. Coonce*, 932 F.3d 623, 642-43 (8th Cir. 2019) (rejecting the argument that "future dangerousness for a person under a sentence of life imprisonment should be narrowed to future dangerousness in prison") (emphasis omitted).

The admission of the testimony about psychopathy was also consistent with the broad admissibility of evidence about future dangerousness at capital sentencing hearings. In *Barefoot v. Estelle*, 463 U.S. 880, 896-903 (1983), for example, the Supreme Court rejected the argument that expert opinion testimony about future dangerousness is too unreliable to be admissible at capital sentencing hearings. The Court concluded that the "adversary process" could be "trusted to sort out the reliable from the unreliable evidence and opinion about future dangerousness." *Id.* at 901. Relevant evidence "should be admitted and its weight left to the fact finder, who would have the benefit of cross examination and contrary evidence by the opposing party." *Id.* at 898. Consistent with *Barefoot*, the Federal Death Penalty Act "erects very low barriers to the admission of evidence at capital

sentencing hearings." *Lee*, 274 F.3d at 494. The Federal Death Penalty Act broadly permits the presentation of relevant information and then allows the parties an opportunity to "rebut any information received at the hearing" and "to present argument as to the adequacy of the information." 18 U.S.C. § 3593(c); *see Lee*, 274 F.3d at 496. The statute allows "more rather than less evidence during the penalty phase" and leaves it to the adversarial system to test that evidence. *Lee*, 374 F.3d at 648. This system "increases reliability by providing full and complete information about the defendant and allowing for an individualized inquiry into the appropriate sentence for the offense." *Id.*

In short, the cross-examination of defense expert Dr. Cunningham about psychopathy, which was the only time that evidence about psychopathy came in at trial, was proper. As the Eighth Circuit reiterated when it affirmed the denial of Lee's § 2255 motion, "there was no 'threat of unfair prejudice' from the elicitation in this case of psychopathy evidence by the government during sentencing," and "the jury properly considered the aggravating factors advanced by the government in determining that Lee should be sentenced to death." *Lee*, 715 F.3d at 224 (quoting *Lee*, 274 F.3d at 495).

### 3. Lee Cannot Show *Strickland* Prejudice or Deficient Performance

A defendant claiming that he received ineffective assistance of counsel must "show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The defendant must then "affirmatively prove prejudice." *Id.* at 693-94.

Lee claims that his trial counsel should have objected that there was no scientific basis for using the PCL-R to predict future dangerousness in prison. According to Lee, if his trial counsel had raised this objection, the issue of psychopathy would have been eliminated from trial. Lee cannot show, however, that the performance of his lawyers was objectively unreasonable. Lee's trial counsel adopted a strategy intended to keep out psychopathy evidence at Lee's sentencing hearing, even though, as described above, evidence about psychopathy was admissible. Specifically, Lee's lawyers limited the scope of the defense case to mitigating factors, permitting defense counsel to argue that cross-examination or rebuttal testimony about psychopathy was impermissible. The district court eventually agreed and excluded evidence about psychopathy. Tr. 7836. As a result, the only evidence about psychopathy at trial came in through Lee's expert, Dr. Cunningham, and the jury heard no expert testimony linking psychopathy and future dangerousness in prison.

Not only was his attorneys' performance not deficient, but there is no reason to believe that the strategy Lee now claims his lawyers should have pursued at trial would have fared any better in keeping out evidence of psychopathy. The argument (*e.g.*, Dkt. 1, at 7) that evidence about psychopathy was "neither scientific nor reliable" is inconsistent with the Federal Death Penalty Act's low barriers to the admissibility of evidence and *Barefoot*'s holding that expert opinion testimony about future dangerousness should not be excluded as unreliable. Indeed, courts applying the Federal Death Penalty Act and *Barefoot* have specifically concluded that the reliability standards for expert testimony under the Federal Rules of Evidence do not provide the standards for determining the admissibility of expert opinion testimony about future dangerousness at a capital sentencing hearing. *See United States v. Fields*, 483 F.3d 313, 341-45 (5th Cir. 2007). Thus, at a 1998 capital trial, after a defendant unsuccessfully sought to exclude PCL-R evidence on the ground that it was not reliable scientific evidence, the jury heard evidence that psychopathy demonstrated future dangerousness. *See United States v. Barnette*, 211 F.3d 803, 811, 815-16 (4th Cir. 2000). Lee's lawyers did not perform deficiently by forgoing a strategy that had failed at a then-recent capital trial, and there is no reasonable

53

likelihood that the outcome of the trial would have been different had they pursued that strategy.[4]

Nor does Dr. Ryan's later disavowal of using the PCL-R in two capital cases demonstrate that Lee's lawyers performed deficiently. Dr. Ryan did not disavow the PCL-R as a predictor of future dangerousness in prison until 2000, after Lee's trial, and in one of those cases, which went to trial in 1998 (the year before Lee's trial), Dr. Ryan actually provided opinion testimony that the defendant's diagnosis as a psychopath using the PCL-R indicated that the defendant would likely present a risk of future dangerousness in prison. *Stitt v. United States*, 369 F. Supp. 2d 679, 699 (E.D. Va. 2005).[5] The strategy that Lee's counsel pursued in this case, in contrast, avoided all testimony by Dr. Ryan about psychopathy. Lee's lawyers cannot be faulted for failing to foresee Dr. Ryan's later disavowal of the PCL-R. The performance of Lee's lawyers did not fall below professional norms.

---

[4] The defendant in *Barnette* received a new sentencing hearing because the court did not permit Dr. Cunningham to testify on sur-rebuttal to respond to the government's expert, 211 F.3d at 823-24, but the jury here, in contrast, heard only Dr. Cunningham's views about psychopathy.

[5] The district court in *Stitt* later concluded that Dr. Ryan's subsequent disavowal of this opinion did not warrant a new sentencing hearing. *Stitt*, 369 F. Supp. 2d at 699-700. The court granted a new sentencing hearing on different grounds. *United States v. Stitt*, 552 F.3d 345, 348 (4th Cir. 2008).

54

When evaluating attorney performance under *Strickland*, courts should not "second-guess an attorney's performance with the benefit of hindsight." *McAfee v. Thurmer*, 589 F.3d 353, 356 (7th Cir. 2009). That admonition is particularly apt here. The strategy that Lee's trial counsel pursued was sound and well within "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

## B.　　The *Brady* and *Napue* Claims Lack Merit

The information about the Oklahoma hearing that the government allegedly suppressed is not *Brady* material because Lee was at the hearing and therefore knew what took place there. *See, e.g.*, *United States v. Wilson*, 787 F.2d 375, 389 (8th Cir. 1986) ("The government is under no obligation to disclose to the defendant that which he already knows."). It was also not *Brady* material because, as discussed above, the court document that Lee uses to recreate the events at the hearing (a fee application from Lee's lawyer) is publicly available. *See United States v. Shields*, 789 F.3d 733, 746-47 (7th Cir. 2015) (court records that the defense could have accessed through due diligence are not *Brady* material).

Moreover, the evidence about the Oklahoma court hearing—which, according to Lee, shows that he pleaded guilty to robbery because a judge found no probable cause for a first-degree murder charge, not because he received a favorable plea deal from prosecutors—is not material. The

55

government used the facts of the Wavra case to show that Lee avoided a lengthy prison sentence and had an opportunity to reform and avoid future trouble but instead continued to act violently and commit additional crimes, culminating in the murders in this case. The substance of this argument remains unchanged whether Lee pleaded guilty to robbery because of judicial findings or because of a favorable plea deal from prosecutors.

## CONCLUSION

For the foregoing reasons, this Court should affirm.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney
Southern District of Indiana

MICHAEL GORDON
Assistant United States Attorney
Eastern District of Arkansas

BRIAN C. RABBITT
Assistant Attorney General

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Rm. 1260
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

July 9, 2020

56

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and 7th Cir. R. 32(c) because it contains 12,989 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface and type-style requirements of Seventh Circuit Rule 32(b) and Fed. R. App. P. 32(a)(5) & (a)(6) because it has been prepared in a proportionally spaced 13-point typeface using Microsoft Word for Office 365.

3.     This brief complies with the privacy redaction requirement of Fed. R. App. P. 25(a) because it contains no personal data identifiers.

4.     The digital version electronically filed with the Court on this day is an exact copy of the written document to be sent to the Clerk.

5.     This brief has been scanned for viruses with the most recent version of McAfee Endpoint Security, version 10.7, which is continuously updated, and according to that program, is free of viruses.

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Rm. 1260
Washington, D.C. 20530
(202) 307-3766

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the Seventh Circuit using the CM/ECF system on July 9, 2020. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Rm. 1260
Washington, D.C. 20530
(202) 307-3766